## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **REYNALDO RAMIREZ,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **C.A. NO. C-09-209** |
| | § | |
| **JIM WELLS COUNTY, et al.,** | § | |
| **Defendants.** | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Reynaldo Ramirez alleges that Jose "Taser Joe" Martinez, acting under color of state law and in the scope of his employment, violated his civil rights by using excessive force against him, attempting to detain him in violation of his Fourth Amendment rights and by falsely and maliciously charging him with the commission of crimes without probable cause to believe the crimes had occurred. Plaintiff asserts causes of action under 42 U.S.C. § 1983 and pendent state law causes of action for intentional infliction of emotional duress, false arrest and imprisonment and assault and battery.[1] Defendant Martinez filed a motion for summary judgment on March 30, 2011 in which he asserted qualified immunity (D.E. 66). Plaintiff responded to the motion on May 17, 2011 and defendant filed a reply on May 27, 2011 (D.E. 77, 86).

---

[1]In his original complaint plaintiff named Jim Wells County, Texas and several other individuals as defendants (D.E. 1, 19). All the defendants except Ramirez have been dismissed from the law suit (D.E. 61, 69, 76, 80).

## JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

## BACKGROUND

The following facts are taken from plaintiff's pleadings and the evidence in the record, viewed in the light most favorable to him.  On June 3, 2009 at approximately 8:15 a.m. plaintiff was arriving at the nursery he owned and operated when he saw several vehicles in the parking lot.  Some of the vehicles were marked with the names of law enforcement agencies and some he believed to be unmarked law enforcement vehicles (Deposition of Reynaldo Ramirez, D.E. 66, Ex. 2, pp. 15, 31).  Approximately eight men had exited the cars and were wearing camouflage clothing and law enforcement uniforms (Ramirez Depo., D.E. 66, Ex. 2, pp. 32-33, 35).

Plaintiff got out of his truck and asked what was going on.  He was angry and upset and probably used profanity (Ramirez Depo., D.E. 66, Ex. 2, p. 36).  The first officer Ramirez spoke to was Michael Teodecki (Ramirez Depo., D.E. 66, Ex. 2, p. 38). Plaintiff asked him what was going on and Teodecki told him that defendant Martinez was the officer in charge (Ramirez Depo., D.E. 66, Ex. 2, p. 39).  Plaintiff next spoke to Martinez, who told him the officers had a warrant for Diana Jasso, plaintiff's sister-in-law (Ramirez Depo., D.E. 66, Ex. 2, pp. 39-40).[2]  Martinez did not ask plaintiff if he knew Jasso (Ramirez Depo., D.E. 66, Ex. 2, p. 40).

---

[2]Plaintiff's testimony on this issue is unclear.  He also testified that no one told him what they were doing there (Ramirez Depo., D.E. 66, Ex. 2, pp. 40-41).

Martinez was coming out of the door as plaintiff was going in and they ran into each other.  Plaintiff asked him what was going on and Martinez told him to shut up (Ramirez Depo., D.E. 66, Ex. 2, pp. 42, 47-48).  Plaintiff was angry and he told Martinez to leave the property (Ramirez Depo., D.E. 66, Ex. 2, pp. 43-44).  A local television station was present and plaintiff thought the incident made his business look bad (Ramirez Depo., D.E. 66, Ex. 2, p. 44).  He also was concerned because the officers were pointing guns at all five of his employees (Ramirez Depo., D.E. 66, Ex. 2, pp. 44-46).

Martinez told plaintiff he was being arrested, grabbed plaintiff by the hand and told him to turn around, but plaintiff did not do so because he did not think there was any reason to arrest him (Ramirez Depo., D.E. 66, Ex. 2, pp. 48-49).  Then Martinez took his taser out and tased plaintiff on his chest (Ramirez Depo., D.E. 66, Ex. 2, pp. 49-50).  Plaintiff fell to the ground, hitting his knee (Ramirez Depo., D.E. 66, Ex. 2, p. 50).  Officer Teodecki was choking plaintiff and then let him go when he felt the tase.  Martinez then tasered plaintiff again in the back (Ramirez Depo., D.E. 66, Ex. 2, p. 50).  The second time plaintiff was tased he urinated and defecated in his pants (Ramirez Depo., D.E. 66, Ex. 2, p. 52).  He was arrested at that point, but no one told him why he was being arrested (Ramirez Depo., D.E. 66, Ex. 2, p. 50).

Officers then picked plaintiff up and threw him in the car (Ramirez Depo., D.E. 66, Ex. 2, p. 51).  On the way to the jail plaintiff and Martinez talked and plaintiff told him they were wrong to have done what they did and that if they were looking for his sister-in-law, she lived at plaintiff's house (Ramirez Depo., D.E. 66-2, pp. 52-53).  When

3

they got to the jail plaintiff told the jailer that he needed to clean himself up.  He went to the restroom and threw his underwear away (Ramirez Depo., D.E. 66-2, p. 54-55). Plaintiff was charged with disorderly conduct (Ramirez Depo., D.E. 66-2, p. 53).  The case was dismissed following a trial to the court (Order, D.E. 77-5).

Plaintiff suffered cuts and abrasions to his right knee which became infected (Ramirez Depo., D.E. 66-2, pp. 58-59).  His knee was swollen for a week and the doctor told him to stay off it for two weeks (Ramirez Depo., D.E. 66-2, p. 63).

Plaintiff filed the instant lawsuit on August 19, 2009.  He makes the following claims under 42 U.S.C. § 1983: (1) Martinez violated plaintiff's Fourth Amendment rights when he used excessive force against him during his arrest; (2) Martinez violated plaintiff's Fourth Amendment rights when they arrested him without probable cause; (3) Martinez violated plaintiff's Fourth Amendment rights when he maliciously charged plaintiff with assault on a public servant and tendered information to the prosecutor which led him to believe that probable existed when it did not.  In addition, plaintiff claims that Martinez violated Texas state law by (1) intentionally inflicting emotional duress; (2) falsely arresting and imprisoning him and (3) subjecting him to assault and battery.

In his motion for summary judgment, defendant asserts that (1) Martinez did not use excessive force; (2) Even if Martinez did use excessive force, he is entitled to the defense of qualified immunity; (3) The seizure of plaintiff was justified by probable cause; (4) Even if probable cause did not exist, Martinez is entitled to the defense of qualified immunity; (5) Plaintiff's malicious prosecution claim is without merit.

4

## APPLICABLE LAW

### A.  Summary Judgment Standard

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  See FED.R.CIV.P. 56(c). An issue is material if its resolution could affect the outcome of the action.  Daniels v. City of Arlington, 246 F.3d 500, 502 (5th Cir. 2001).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, drawing all justifiable inferences in favor of the party opposing the motions.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).  The Court will not weigh the evidence or evaluate the credibility of witnesses.  Caboni v. General Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).

The movant bears the initial burden of showing the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).  If the movant demonstrates there is an absence of evidence to support the nonmovant's case, the nonmovant must come forward with specific facts showing that there is a genuine issue for trial.  See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356.  To sustain this burden, the nonmovant cannot rest on the mere allegations of the

5

pleadings.  See Celotex, 477 U.S. at 324, 106 S.Ct. at 2553; Caboni, 278 F.3d at 451;

FED.R.CIV.P. 56(e).  After the nonmovant has been given an opportunity to raise a

genuine factual issue, if no reasonable juror could find for the nonmovant, summary

judgment will be granted.  Caboni, 278 F.3d at 451.

**B.  42 U.S.C. § 1983 Claims**

To state a claim under §1983 a plaintiff must (1) allege a violation of a right

secured by the Constitution or laws of the United States and (2) demonstrate that the

alleged deprivation was committed by a person acting under color of state law.  Moore v.

Willis Independent School District, 233 F.3d 871, 874 (5th Cir. 2000)(citing Leffall v.

Dallas Ind. Sch. Dist., 28 F.3d 521, 525 (5th Cir. 1994)).

Claims under § 1983 may be brought against persons in their individual or official

capacities, or against a governmental entity.  Goodman v. Harris County, 571 F.3d 388,

395 (5th Cir. 2009)(citing Board of County Comm'rs of Bryan County v. Brown, 520

U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).  "Personal-capacity suits seek to

impose liability upon a government official as an individual while official-capacity suits

'generally represent only another way of pleading an action against an entity of which an

officer is an agent.'"  Id. (citing Monell v. Dept. of Soc. Serv's of City of New York, 436

U.S. 658, 690, n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).  In a personal-capacity suit,

the individual defendant may assert personal immunity defenses such as qualified

immunity.  Plaintiff in this case named Martinez as a defendant in his personal capacity.

6

### C.  Qualified Immunity

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 129 S. Ct. 808, 815, 172 L.Ed.2d 565 (2009)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).  When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense.  McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002)(en banc).  To discharge this burden, the plaintiff must satisfy a two-prong test.  Atteberry v. Nocona Gen. Hosp., 430 F.3d 245, 251-52 (5th Cir. 2005). First he must claim that the defendants committed a constitutional violation under current law.  Id. (citation omitted).  Second, he must claim that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of.  Id.

While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory.  Pearson, 129 S. Ct. at 818 (receding from Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

### 1. Excessive Force

To prevail on a § 1983 excessive force claim under the Fourth Amendment, a plaintiff must first show that he suffered (1) an injury that (2) resulted directly and only from the use of force that was clearly excessive to the need and that (3) the force was clearly unreasonable.  Ontiveros v. City of Rosenberg, Tex., 564 F.3d 379, 382 (5th Cir. 2009)(citing Freeman v. Gore, 483 F.3d 404, 410 (5th Cir. 2007)).  Tasers and stun guns fall into the category of non-lethal force.  Bryan v. MacPherson, 630 F.3d 805, 825 (9th Cir. 2010)(citing Lewis v. Downey, 581 F.3d 467, 476 (7th Cir. 2009); United States v. Fore, 507 F.3d 412, 413 (6th Cir. 2007) and San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose, 402 F.3d 962, 969, n. 8)(9th Cir. 2005)).  Nevertheless, all force, lethal and non-lethal, must be justified by the need for the specific level of force employed.  Bryan, 630 F.3d at 825 (citing Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).  Defendant Martinez argues that he did not use excessive force, and that even if he did use excessive force he is entitled to qualified immunity.

Plaintiff testified and presented evidence that he suffered an abrasion to his knee which became infected and also that he suffered injuries to his chest where he was tased. He has arguably created a fact issue regarding whether he suffered an injury.

Regarding whether the force used in arresting him was excessive to the need and unreasonable, "reasonableness" is measured in objective terms, by examining the totality of the circumstances.  Peterson v. City of Fort Worth, Tex., 588 F.3d 838, 844 (5th Cir.

2009)(citing <u>Ohio v. Robinette</u>, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996)).

A determination of excessive force is made "'from the perspective of a reasonable officer

on the scene, rather than with the 20/20 vision of hindsight.'" <u>Id.</u> at 846 (citing <u>Graham v.</u>

<u>Connor</u>, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).  The objective

reasonableness of the force depends on the facts and circumstances of the case.  <u>Collier v.</u>

<u>Montgomery</u>, 569 F.3d 214, 218-219 (5th Cir. 2009).  "The test for reasonableness must

consider 'whether the suspect poses an immediate threat to the safety of the officers or

others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"

<u>Id.</u> (citing <u>Graham</u>, 490 U.S. at 396, 109 S.Ct. at 1871).

Plaintiff testified that when he did not put his hands behind his back when

Martinez asked him to do so, Martinez responded by tasing him (Ramirez Depo., D.E. 66-

2, p. 50).  Plaintiff also described himself as angry, upset and probably using profanity.

Martinez testified that when the officers arrived at plaintiff's business to serve a

warrant on Ms. Jasso Flores, he saw a man and a woman.  Martinez asked the man if he

knew Ms. Jasso Flores and the man said, "No, she's not here." (Deposition of Jose

Martinez, D.E. 66-1, pp. 42-44).

Martinez then looked out the window and saw plaintiff pull up in his truck, jump

out and aggressively approach another officer (Martinez Depo., D.E. 66-1, p. 47).  As

Martinez was walking outside, plaintiff was coming in and bumped Martinez with his

chest, telling him, "Get the fuck out of my business." (Martinez Depo., D.E. 66-1, pp. 47-

48).  Martinez asked him about Ms. Flores and plaintiff told him, "I don't know who the

fuck you're talking about, you don't have no business disrupting my place.  Get the fuck

out of here now."  (Martinez Depo., D.E. 66-1, p. 49).  Martinez told plaintiff to calm

down several times (Martinez Depo., D.E. 66-1, p. 49).  Martinez also told plaintiff to

shut his mouth or he was going to go to jail for creating a disturbance (Martinez Depo.,

D.E. 66-1, p. 54).  There were other people present besides law enforcement officers

(Martinez Depo., D.E. 66-1, pp. 52-53).  Martinez told plaintiff more then five times to

shut his mouth or calm down (Martinez Depo., D.E. 66-1, p. 54).  Plaintiff was yelling

and using profanity and telling the officers to leave because they were disrupting his

business (Deposition of Jose Martinez, D.E. 66-1, p. 54).

      Martinez told plaintiff he was under arrest and to put his hands behind his back.

Martinez grabbed plaintiff's wrist to handcuff him and plaintiff pulled away.  Martinez

tried to grab plaintiff's shirt to take him to the ground and plaintiff took a swing at him

with his left hand but did not hit him (Martinez Depo., D.E. 66-1, pp. 55, 65).  Teodecki

pushed plaintiff away from Martinez and Martinez told him several times to get on the

ground and stop resisting.  Martinez saw that plaintiff had something in his hand but

could not tell what it was, so he decided to tase him (Martinez Depo., D.E. 66-1, pp. 55-

56).  Even after he tased him, plaintiff continued to resist (Martinez Depo., D.E. 66-1, pp.

63-64).  Martinez testified that he used the taser on plaintiff only one time on his chest

(Martinez Depo., D.E. 66-1, p. 62).[3]  Martinez never found out what plaintiff had in his hand and is not alleging that he had a weapon (Martinez Depo., D.E. 66-1, pp. 55-57). After he was taken to the county jail plaintiff told Martinez the officers could find Ms. Flores at plaintiff's house and they arrested her there (Martinez Depo., D.E. 66-1, pp. 60-61, 73).

In his response to the motion for summary judgment, plaintiff submitted deposition testimony from Officer Teodecki, who was present the day plaintiff was arrested. Teodecki testified that plaintiff was asking the officers what they were doing at his business.  He described plaintiff as standing in front of his door, being upset and "want[ing] to make a confrontation" with the officers (Deposition of Michael Teodecki, D.E. 77-3, pp. 9-10).  Plaintiff was yelling and making it clear that he was upset that the officers were there (Teodecki deposition, D.E. 77-3, p. 10).  Defendant Martinez was trying to explain to plaintiff what the officers were doing there and the discussion was heated (Teodecki deposition, D.E. 77-3, p. 13).  Plaintiff did not calm down and had his hands in the air and was saying "What the hell?"  or "What the heck?" (Teodecki deposition, D.E. 77-3, p. 13).

---

[3]In the arrest report Martinez prepared he stated that he tried to tase plaintiff once but the probes did not penetrate his shirt to make contact with his skin.  After the officers took plaintiff to the ground Martinez tasered him in the center of his back (Report, D.E. 77-4, p. 2).  The arrest report also differs from Martinez's deposition testimony in that he mentions nothing about trying to grab plaintiff's shirt (Id.).  Martinez also did not report that plaintiff took a swing at him, but did state that plaintiff lunged at him as if to assault him (Id. at 1).

Martinez approached plaintiff and told him to stop doing what he was doing and took a controlling stance.  Plaintiff stepped toward Martinez and was still yelling with his hands in the air (Teodecki deposition, D.E. 77-3, pp. 13-14).  Martinez withdrew his taser and Teodecki stepped close to plaintiff so that he could take him to the ground and stop any struggling (Teodecki deposition, D.E. 77-3, pp. 14-15).  Teodecki saw Martinez tase plaintiff only one time and did not see plaintiff take a swing at anybody (Teodecki deposition, D.E. 77-3, pp. 15-16).  Teodecki stated that he did not think Martinez had a reason to tase plaintiff, but he did not see who approached whom first (Teodecki deposition, D.E. 77-3, p. 14).  Teodecki thought plaintiff should have been charged with several offenses based on his behavior (Teodecki deposition, D.E. 77-3, pp. 19-20).

Teodecki also testified that he observed Martinez use the Taser in other circumstances when he thought it was unnecessary and described Martinez's reliance on the taser as "overzealous."  (Teodecki deposition, D.E. 77-3, pp. 25-27).  Teodecki described Martinez as a "fucking asshole," based on his treatment of citizens and also his fellow officers (Teodecki deposition, D.E. 77-3, pp. 27, 33).  Teodecki also stated that Martinez had given him a bad job reference at one point (Teodecki deposition, D.E. 77-3, p. 31).

On the day of plaintiff's arrest a local television station was present and recorded the incident.  Defendant Martinez submitted a copy of the DVD recording[4] and argues

_____

[4]Located in the record at D.E. 66, Ex. 3B.

12

that it shows that after officers told plaintiff to shut up and put his hands behind his back, plaintiff shook off the officers' grip and threw a punch at Martinez.  However, the DVD does not clarify what happened.  It lasts only a few seconds and most of the view of the interaction between plaintiff and the officers is blocked by a vehicle and by officers' bodies.  It is clear that plaintiff struggled with the officers, but plaintiff is not seen to throw a punch and it is unclear whether the struggle was initiated by plaintiff, or was the result of the first tasing.  The recording does appear to show an officer tasing plaintiff in the back after he was on the ground.

The widely varying accounts of what happened the day plaintiff was tased and arrested preclude summary judgment on the issue of whether Martinez used excessive force.  All the parties agree that plaintiff was upset, angry and using profanity, but defendant maintains that plaintiff approached him aggressively and attempted to hit him, while plaintiff argues that he simply refused to put his hands behind his back when asked to do so.  A person acting in an upset and angry manner would not necessarily compel a reasonable officer to use a taser on him, while actively threatening an officer or actively resisting arrest would be a reason to use such force.  Compare Bryan, 630 F.3d at 829-832 (use of taser not justified when mentally ill person was shouting gibberish and hitting himself in the quadriceps); Autin v. City of Baytown, 174 Fed. Appx. 183, 2005 WL 3556677 (5th Cir. 2005)(use of taser not justified when woman turned her back on officer and picked up a brick with which to bang on the door of a house) and Brown v. City of Golden Valley, 574 F.3d 491 (8th Cir. 2009)(use of taser not justified to remove

13

frightened woman who disobeyed two orders to get out of the car and was calling 911 while four officers were present) with Draper v. Reynolds, 369 F.3d 1270 (11th Cir. 2004)(use of taser justified when officer asked person five times to retrieve documents from truck cab and person refused, used profanity, moved around, paced in agitation and repeatedly yelled at officer); Mattos v. Agarano, 590 F.3d 1082, 1089 (9th Cir. 2010)(use of taser not excessive force in tense domestic violence situation where woman stood between officer and her husband, questioned why husband was being arrested and put her hands on officer's chest) and Floyd v. Corder, 2011 WL 1834249 at *2 (11th Cir. 2011)(use of taser justified when man was yelling at his nephew and was believed to have hit him, refused to cooperate with deputy's attempt to assess situation, hit deputy's hand away when deputy attempted to intervene and refused to stop and get on the ground when ordered to do so).

Even if the amount of force used were excessive, in order to overcome the defense of qualified immunity, plaintiff would have to show that a reasonable officer would have known that the amount of force he was using was unreasonable.  In Graham, the Supreme Court reminded lower courts that "'not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." Graham, 490 U.S. at 396, 109 S.Ct. at 1872 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir. 1973)).  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary

14

in a particular situation." <u>Graham</u>, 490 U.S. at 396, 109 S.Ct. at 1872.  Again, the factual

dispute in this case precludes a finding that a reasonable officer would have tased the

plaintiff under the circumstances because it is unclear whether the plaintiff's actions

warranted it.  This is the kind of issue that is best decided by a jury.  <u>See</u> <u>Mesa v. Prejean</u>,

543 F.3d 264 (5th Cir. 2008)(issue of qualified immunity is question of law, but where

there are fact issues related to immunity, jury may decide question) and <u>Castellano v.</u>

<u>Fragozo</u>, 311 F.3d 689, 704 (5th Cir. 2002)(jury may resolve issue of qualified immunity

if factual issues are in dispute), *rev'd on other grounds*, 352 F.3d 939 (5th Cir. 2003).

Accordingly, it is recommended that summary judgment be denied on plaintiff's

excessive force cause of action.

### 2. Arrest without Probable Cause

Plaintiff argues that Martinez arrested him without probable cause.  Claims of false

arrest involve the guarantees of the Fourth and Fourteenth amendments when the

individual complains of an arrest without probable cause.  <u>Thomas v. Kippermann</u>, 846

F.2d 1009, 1011 (5th Cir. 1988).  "'Probable cause' exists when the totality of the facts

and circumstances within a police officer's knowledge at the moment of arrest are

sufficient for a reasonable person to conclude that the suspect had committed or was

committing an offense." <u>Deville v. Marcantel</u>, 567 F.3d 156, 164 (5th Cir. 2009)(citing

<u>Resendiz v. Miller</u>, 203 F.3d 902, 903 (5th Cir. 2000)).  If there was probable cause for

any of the charges made, the arrest was supported by probable cause and the claim for

false arrest fails.  <u>Id.</u> (citing <u>Wells v. Bonner</u>, 45 F.3d 90, 95 (5th Cir. 2000)).

The standard of probable cause "'applies to all arrests, without the need to 'balance' the interests and circumstances involved in particular situations.'"  Atwater v. City of Lago Vista, 532 U.S. 318, 354, 121 S.Ct. 1536, 1557, 149 L.Ed.2d 549 (2001)(quoting Dunaway v. New York, 442 U.S. 200, 208, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)).  "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."  Id.

Plaintiff was arrested for disorderly conduct.  Disorderly conduct is a violation of Texas Penal Code § 42.01, which provides, in relevant part, the following:

(a) A person commits an offense if he intentionally or knowingly:

> (1) uses abusive, indecent, profane or vulgar language in a public place, and the language by its very utterance tends to incite an immediate breach of the peace;
>
> (2) makes an offensive gesture or display in a public place, and the gesture or display tends to incite an immediate breach of the peace; . . .
>
> (4) abuses or threatens a person in a public place in an obviously offensive manner;
>
> (5) makes unreasonable noise in a public place . . . or in or near a private residence that he has no right to occupy; . . .

(c) For purposes of this section:

> (1) an act is deemed to occur in a public place or near a private residence if it produces its offensive or proscribed consequences in the public place or near a private residence; and

> (2) a noise is presumed to be unreasonable if the noise exceeds a decibel level of 85 after the person making the noise receives notice from a magistrate or peace officer that the noise is a public nuisance.

A person behaving in an angry and upset manner and criticizing police officers does not necessarily give the officers probable cause to arrest him.  Individuals have a First Amendment right to free speech that includes expressing dissatisfaction with the actions of police officers and it is a violation of the person's right to arrest him for expressing dissatisfaction with an officer's actions.  "Courts need to be alert to arrests that are prompted by constitutionally protected speech, even when the arrestee's words are directed at a police officer performing official tasks.  Trained officers must exercise restraint when confronted with a citizen's anger over a police action."  Mesa, 543 F.3d at 273 (citing Enlow v. Tishomingo County, 962 F.2d 501, 509 (5th Cir. 1992) and Lewis v. City of New Orleans, 415 U.S. 130, 134-35, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974)(Powell, J., concurring)).  "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."  City of Houston, Texas v. Hill, 482 U.S. 451, 462-63, 107 S.Ct. 2502, 2510, 96 L.Ed.2d 398 (1987).  "[T]he First Amendment recognizes, wisely, we think, that a certain amount of expressive disorder not only is inevitable in a society committed to individual freedom, but must itself be protected if that freedom would survive."  Id., 482 U.S. at 472, 107 S.Ct. at 2515).  Conversely, if a person's conduct gives an officer probable cause to believe he is guilty of a crime, the

person "does not taint a proper arrest by contemporaneously shouting 'police officers are corrupt.'" Mesa, 543 F.3d at 273.

Plaintiff acknowledges that he was angry and upset and probably used profanity when he saw the law enforcement officers at his business  (Ramirez Depo., D.E. 66-2, pp. 36, 42, 48).  However, he also testified that he was asking what was going on and that no one would tell him (Ramirez Depo., D.E. 66-2, p. 36).  He first asked Teodecki why the officers were there but Teodecki just told him Martinez was in charge (Ramirez Depo., D.E. 66-2, p. 39).  He next saw Martinez, who told him the officers were looking for Jasso but did not ask plaintiff if he knew Jasso (Ramirez Depo., D.E. 66-2, pp. 39-40). After plaintiff and Martinez ran into each other, Martinez told plaintiff to shut up (Ramirez Depo., D.E. 66-2, pp. 42-43).  Plaintiff told Martinez to leave his place of business (Ramirez Depo., D.E. 66-2. p. 48).  Plaintiff was upset that law enforcement officers were pointing guns at his employees (Ramirez Depo., D.E. 66-2, p. 44).  Plaintiff was asking Martinez what was going on when Martinez took out his taser and tased him (Ramirez Depo., D.E. 66-2, pp. 47-48).

Martinez testified that the first thing plaintiff said to him was "Get the fuck out of my business" and that he "was completely out of control."  (Martinez Depo., D.E. 66-1, pp. 47, 53).  Martinez said that he asked plaintiff several times to calm down and stop using vulgar language (Martinez Depo., D.E. 66-1, p. 54).  Teodecki also described plaintiff as upset and said that "it was pretty much a commotion, once [plaintiff] got there." (Teodecki Depo., D.E. 77-3, pp. 12-13).

18

If events unfolded as plaintiff described, a jury might find that a reasonable officer would not have believed he had probable cause to arrest him.  See, e.g., Vela v. White, 703 F.2d 147, 151 (5th Cir. 1983)(officer did not have probable cause to arrest woman who became visibly distraught at the sight of her mother's arrest and began crying and possibly screaming); Jimmerson v. State, 561 S.W.2d 5, 7 (Tex.Crim.App. 1978)(en banc)(officer did not have probable cause to arrest individual who was highly irritated and used profane language).  On the other hand, if plaintiff acted in the manner described by the officers, a jury might well find that a reasonable officer would have had probable cause to arrest him, or at least would have reasonably believed he had probable cause to arrest him.  See, e.g., Pfannstiel v. City of Marion, 918 F.2d 1178, 1184 (1990), *abrogated on other grounds as recognized in* Martin v. Thomas, 973 F.3d 449, 455 (5th Cir. 1992)(officers had probable cause to arrest individuals for disorderly conduct when they repeatedly questioned the authority of the officers in a loud and abusive manner, confronted officers and refused to desist when requested to do so).

Plaintiff's summary judgment evidence raises genuine issues of material fact regarding his demeanor and conduct prior to his arrest and the objective reasonableness of Martinez's actions regarding the arrest.  Accordingly, it is recommended that defendant's motion for summary judgment be denied on the issue of false arrest.

### 3.  Malicious Prosecution

Plaintiff asserts that Martinez violated his Fourth Amendment rights when he maliciously charged plaintiff with assault on a public servant and tendered information to

19

the prosecutor which led him to believe that probable cause existed when it did not.

Defendant counters that "malicious prosecution" standing alone does not violate the

constitution, citing in support Castellano v. Fragozo, 352 F.3d 939, 942 (5th Cir. 2003).

While defendant is correct that there is no freestanding right to be free from malicious

prosecution, the Fifth Circuit did hold the following:

> The initiation of criminal charges without probable cause may set in force events
> that run afoul of explicit constitutional protection–the Fourth Amendment if the
> accused is seized and arrested for example, or other constitutionally secured rights
> if a case is further pursued.  Such claims of lost constitutional rights are for
> violation of rights locatable in constitutional text, and some such claims may be
> made under 42 U.S.C. § 1983.  Regardless, they are not claims for malicious
> prosecution and labeling them as such only invites confusion.

Id. at 953-954.

Nevertheless, it is not necessary to analyze whether plaintiff has made out a

constitutional claim because nothing in the record indicates that plaintiff was charged

with or prosecuted for assault on a public servant.  To the contrary, the record shows only

that plaintiff was charged with disorderly conduct and that the charge was dismissed

following a trial to the court (Order, D.E. 77-5; Resp. to MSJ, D.E. 77, p. 6).

Accordingly, summary judgment should be entered for respondent on plaintiff's

malicious prosecution claim.

### D.  State Law Causes of Action

In his first amended original complaint (D.E. 19) plaintiff alleged state law causes

of action for intentional infliction of emotional duress, false arrest, false imprisonment

and assault and battery.  Defendant did not address these causes of action in his motion

20

for summary judgment.  Accordingly, no recommendation is made regarding the state law causes of action.

## RECOMMENDATION

Based on the foregoing, it is respectfully recommended that defendant Martinez's motion for summary judgment (D.E. 66) be granted in part and denied in part.  Summary judgment should be entered for defendant on plaintiff's §1983 malicious prosecution claim.  Summary judgment should be denied on plaintiff's §1983 excessive force and false arrest causes of action and plaintiff should be allowed to proceed on these claims.  No recommendation is made on plaintiff's state law causes of action because defendant did not move for summary judgment on those claims.

Respectfully submitted this 20th day of June, 2011.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996)(en banc).